RECORD NO. 13-2339

In The
# United States Court of Appeals
### For The Fourth Circuit

## JORDAN A. BROWN,

*Plaintiff – Appellee*,

v.

## RAMONA BROCKETT,

*Defendant – Appellant*,

and

**UNIVERSITY OF MARYLAND EASTERN SHORE,**

*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE**

---

**REPLY BRIEF OF APPELLANT**

---

Laura L. Nagel
ALAN LESCHT & ASSOCIATES, PC
1050 17th Street, NW, Suite 400
Washington, DC  20036
(202) 463-6036

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    I.    The Court Should Consider Defendant's Appeal as an Appeal of the District Court's Denial of Plaintiff's Motion for a New Trial under Rule 59 of the Federal Rules of Civil Procedure ...............2

    II.    Defendant did not Negligently or Maliciously Disseminate False Statements Regarding Plaintiff ......................................................3

    III.    The Remitted Compenstatory Damages Award was Excessive ...........7

    IV.    The Remitted Punitive Damages Award was Excessive .....................9

CONCLUSION ........................................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Bradley v. Carydale Enterprises,
    730 F. Supp. 709 (E.D. Va. 1989) ................................................................. 7

Hearst Corp. v. Hughes,
    297 Md. 112 (1983) ........................................................................................ 7

Henderson v. Claire's Stores, Inc.
    607 F. Supp. 2d 725 (D. Md. 2009) ............................................................... 7

Poynter v. Ratcliff,
    874 F.2d 219 (4th Cir. W. Va. 1989) ......................................................... 2, 3

State Farm v. Campbell,
    538 U.S. 408 (2003) ....................................................................................... 9

**RULE**

Fed. R. Civ. P. 59 ................................................................................................ 2, 3

**INTRODUCTION**

In this case, the district court remitted the jury's award of $50,000 compensatory damages and $150,000 punitive damages to $20,000 compensatory damages and $20,000 punitive damages after the jury found that Defendant defamed Plaintiff when she sent one email to a group of fifteen individuals.

However, the verdict should be vacated because it was against the weight of the evidence; Plaintiff did not prove that Defendant acted with actual knowledge of the statement's falsity or in reckless disregard thereof; Defendant reasonably relied on the information and direction she received from Byron Rupp of PAD national headquarters. Further, liability for punitive damages should not have been found because Plaintiff did not prove that Defendant acted with malice or willful blindness when she acted upon the information and direction given to her by Mr. Rupp.

Further, even if liability is found, the actual harm suffered by Plaintiff was extremely minimal. Plaintiff established zero injury caused by Defendant's email and much of the worry he claimed to have felt was for a minimal duration and/or was unreasonable under the circumstances. Therefore, the compensatory damages awarded are vastly excessive in relation to the actual effects of the single email considered by the jury and the punitive damages are likewise absurd in relation to the nominal harm suffered and that the conduct at issue was limited to one email.

1

# ARGUMENT

I. The Court Should Consider Defendant's Appeal as an Appeal of the District Court's Denial of Plaintiff's Motion for a New Trial under Rule 59 of the Federal Rules of Civil Procedure

Plaintiff rightly stated that the criteria for review of denial of a motion notwithstanding the verdict is *de novo*. In Defendant's Statement of Issues Presented for Review, Defendant misstated that the issue presented for review was whether the district court abused its discretion when it denied Defendant's motion for judgment notwithstanding the verdict. Defendant meant to state that the issue was whether the district court erred when it denied Defendant's motion for a new trial. Defendant's intent is clear from her statement in the standard of review section of her brief, in which she cites page 223 of <u>Poynter v. Ratcliff</u>, 874 F.2d 219 (4th Cir. W. Va. 1989). Brief of Appellant, 13. On the page of <u>Poynter</u> to which Defendant specifically cited in her brief, <u>Poynter</u> holds that

> A motion for a new trial is governed by a different standard from a directed verdict motion. *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir. 1980). Under Rule 59 of the Federal Rules of Civil Procedure, a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial. *Id.* at 891-92; *Williams v. Nichols*, 266 F.2d 389, 392 (4th Cir. 1959).

2

Poynter at 223.  Poynter goes on to review the matter under the abuse of discretion standard, as stated in Defendant's brief.

Thus, it is clear that Defendant intended to appeal the district court's decision on Defendant's motion for a new trial under the standard set forth in the cited case.  This Court should consider Defendant's argument as an appeal of the district court's denial of her motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure in the interest of justice.  Plaintiff will not be prejudiced by such consideration because Plaintiff fully responded to Defendant's arguments supporting this issue in Plaintiff's response brief.  See Brief of Appellee, 14 – 22.

II. Defendant did not Negligently or Maliciously Disseminate False Statements Regarding Plaintiff

To support his contention that Defendant acted negligently and with malice, Plaintiff relies on the results of the investigation conducted by UMES professor David Spinner *subsequent* to Defendant's dissemination of the allegedly defamatory email and on an unsupported contention that Defendant had evidence "right in front of her" that was contrary to the statements at the time she sent the email.  Brief of Appellee, 16-17.

However, the only relevant facts are those that the Defendant knew or should have known at the time she sent the email (before Dr. Spinner's investigation).  Moreover, contrary to Plaintiff's position, there was no testimony or evidence offered that Defendant possessed "the same exact documents and

3

information" Dr. Spinner later possessed at the time she sent the email. Brief of Appellee, 16-17.

No one testified that Defendant possessed or had seen a copy of the check or any other documents at the time she sent the email. On the contrary, Defendant testified that she did not open the PAD bank statements that came to her office (App. 502), that she relied upon the information Mr. Rupp gave her in a telephone call regarding the disposition of the funds (App. 514, 518-519), and that she did not see a copy of the processed check until after she had written the email at issue and that she believed the first time she saw a copy of the check was when Dr. Spinner showed it to her in March 2010 (App. 525). Defendant was clear that she did not personally conduct an investigation because the funds at issue belonged to PAD and, therefore, she relied upon the investigation PAD did to determine why the funds Vincent Brown tendered were never transmitted to the national headquarters. App. 525, 526. Therefore, Defendant reasonably relied upon the information related to her by PAD headquarters regarding its investigation into the disposition of its funds and she did not have information contradicting their representations to her at the time she sent the allegedly defamatory email.

Notably, Dr. Spinner's report and investigation was "into the allegations that Mr. Jordan Brown… misappropriated funds from PAD in the amount of $70.00." App. 836. It was not an investigation into what information Defendant had at the

4

time she wrote the email at issue or of her reasons for doing so. Thus, it is immaterial that PAD may not have provided Dr. Holden or Dr. Spinner with documents reflecting PAD's investigation or communications to Defendant, as that is not what they were investigating. Defendant consistently testified that she wrote the subject email after a telephone conversation with Byron Rupp based upon the information and direction he gave her, and there was no evidence to refute her account of the oral communication. App. 503, 504, 514, 516. In fact, this telephone call was corroborated by a reference to the call in an email by Jennifer Smutek. App. 515, 517, 1046.

Finally, Plaintiff claims that the jury was presented with no evidence that Plaintiff did anything wrong in his handling of the $70.00 initiation fee paid by Vincent Brown in November 2008. On the contrary, the jury was presented with evidence that:

- Vincent Brown tendered a check for his initiation fee to Plaintiff in November 2008. App. 148.

- Plaintiff deposited the check in an account he maintained for the local PAD chapter at UMES. App. 149-150.

- Plaintiff never remitted the funds to PAD's national headquarters, as required for Vincent Brown's induction into membership and as required by the chapter rules. App. 152, 1068.

- Plaintiff gave Nicholas Washington, his successor at PAD, two cashier's checks and some documents regarding financial

5

>records of the local chapter. App. 128-130, 804-812. The documents admitted into evidence did not reflect any clear or specific information that Vincent Brown's induction was pending or that his funds were to be forwarded to the national headquarters at any specific time. App. 804-812. Further, Plaintiff did not testify that he specifically explained this situation to Nicholas Washington. As subsequent PAD treasurer Jessica Abrantes described the financial records given to her by Nicholas Washington, "It was just a folder with a bunch of documents and some receipts. I tried to go through it and understand it, but I couldn't… nothing was kept efficiently, There was no record book saying what was deposited, when it was deposited…" App. 453, 457-458.

At the time Defendant sent the allegedly defamatory email, she had information that Vincent Brown had paid his initiation fee to Plaintiff but the funds never reached the national headquarters, she knew that Plaintiff had resigned his post abruptly (corroborated by Jessica Abrantes, App. 158-159), and she was told by Byron Rupp that PAD's investigation revealed that Jordan Brown had misappropriated the funds. App. 514, 518-519.

Therefore, Plaintiff did not prove by preponderance of the evidence that Defendant knew that the statement was false or acted in reckless disregard of its falsity and a finding of defamation is not supported. Moreover, Plaintiff did not prove by clear and convincing evidence that Defendant acted with actual knowledge of or willful blindness to the falsity of her statements *at the time she made them*, therefore, an award of punitive damages was not supported.

6

III.  The Remitted Compenstatory Damages Award was Excessive

Plaintiff mischaracterizes Defendant's argument regarding the calculation of a compensatory damages award,  In her brief, Defendant stated that while it is clear that "the law presumes that the reputation of the person about whom [a *per se* defamatory statement] was published has been injured," *a lack of physical, emotional, or economic harm remains relevant when calculating compensatory damages*.  Brief of Appellant, 24 (emphasis added), quoting Henderson v. Claire's Stores, Inc. 607 F. Supp. 2d 725, 732 (D. Md. 2009).

In Henderson, the court noted that the plaintiff could seek "nominal" compensatory damages where the plaintiff did not seek any medical or emotional treatment regarding any pain or suffering and she suffered to financial loss. Henderson at 732.  Likewise, in Bradley v. Carydale Enterprises, the plaintiff was awarded $9,000 compensatory damages where she did not seek or receive medical or psychological counseling or treatment for her mental pain and suffering or difficulty sleeping.  730 F. Supp. 709, 726-727 (E.D. Va. 1989).  Notably, in Hearst Corp. v. Hughes, discussed by Plaintiff for the proposition that plaintiff need not prove actual impairment of reputation if emotional harm occurred, the court upheld the jury's modest award of $2,500 where "no out-of-pocket loss [was] sustained by [plaintiff]" and there was no "evidence of impairment of reputation." 297 Md. 112, 117 (Md. 1983).

7

In this case, Plaintiff contends that he worried about the effects of the allegedly defamatory statements at different points in time, but he did not testify to any actual financial loss, he did not seek or receive any medical or psychological treatment, he did not testify that his worry negatively impacted his grades or actual employment, and he did not alter his plans for his course of study or future career based on these events.

In fact, though Plaintiff was initially worried that he would not be admitted to law school due to the subject email, he was admitted to Rutgers Law School only one month after he learned of the email. App. 158. Further, though a few months later he learned of the character and fitness component of legal bar admissions, the district court found that he "could not have suffered any reasonable fear that he would not be admitted to the bar" based upon the subject email because of Dr. Spinner's investigation report clearing him of wrongdoing. App. 760. Further, Plaintiff, himself, testified that he was not worried about any reports being made to law enforcement by Vincent Brown because "they're [law enforcement] not doing anything about it because there's nothing to do anything about." App. 161.

Therefore, compensatory damages of $20,000 far exceeds any reasonable amount supported by the evidence in this matter.

8

IV.   The Remitted Punitive Damages Award was Excessive

Likewise, the award for punitive damages was excessive and unsupported by the evidence.  Considering the factors laid out in State Farm v. Campbell, Plaintiff did not suffer physical impairment or any injury requiring medical attention, there was no "reckless disregard of the health or safety of others," there was no showing that Plaintiff had particular financial vulnerability or that Defendant engaged in intentional malice, trickery, or deceit, and the defamatory conduct submitted to the jury consisted of a single email.  538 U.S. 408, 425 (2003).

In this case, as the compensatory damages awarded should have been reduced to a nominal amount, the punitive damages should have also been eliminated or reduced.  Defendant was obliged to represent herself at trial and, although she attended law school, she was not a barred attorney.  App. 495.  The district court feared that the jury's punitive damages award was disproportionately increased because they were annoyed by her personality.  App. 759.  However, Defendant's lack of legal experience and a perception of her personality are not proper considerations in calculating a punitive damages award.

As discussed *supra*, Defendant reasonably relied on the investigation and direction of PAD headquarters when she sent the email in question.  However, even if the finding of liability is upheld, $20,000 in compensatory damages and $20,000 in punitive damages are absurd awards for remarks made in one email

when Plaintiff was cleared of wrongdoing shortly thereafter and suffered no economic or physical harm.

## CONCLUSION

For the foregoing reasons, this Court should vacate the Amended Judgment and enter judgment in favor of Defendant or order a new trial. In the alternative, this Court should vacate the remitted damages awarded and enter awards for nominal compensatory damages and zero punitive damages, or order a new trial.

August 15, 2014                    Respectfully submitted,

/s/ Laura L. Nagel
Laura L. Nagel
ALAN LESCHT AND ASSOCIATES, PC.
1050 17th Street, NW, Suite 400
Washington, D.C. 20036
(202) 463-6036
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,239*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>August 15, 2014</u>            /s/ Laura L. Nagel
                                          *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 15th day of August, 2014, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Peter F. Axelrod
> N. Tucker Meneely
> COUNCIL, BARADEL, KOSMERL & NOLAN, PA
> 125 West Street, Fourth Floor
> Annapolis, Maryland  21404
> (410) 268-6600
>
> *Counsel for Appellee*

I further certify that on this 15th day of August, 2014, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

>                         /s/ Laura L. Nagel
>                         *Counsel for Appellant*